HARVEY A. HALL *v.* RESERVE GAS COMPANY

(No. 7088)

Submitted February 17, 1932.    Decided February 23, 1932.

*W. J. Smith, Linn Mapel Brannon,* and *J. D. Jones,* for appellant.

*Charles Powell, Kemble White, Anthony F. McCue,* and *Harold M. Garrett,* for appellee.

WOODS, JUDGE:

Harvey A. Hall, who, since the death of his father, Minor J. Hall, in 1927, has become invested with 196 acres of the latter's property, complains of a decree of the circuit court of Lewis county, sustaining the demurrer to his bill for reformation of a certain compromise agreement, entered into in 1911, between Minor J. Hall and the Reserve Gas Company.

It appears from the bill that Minor J. Hall, in 1900, executed a lease for oil and gas to defendant's assignor, on a tract of 196 acres, for a term of ten years, and as long thereafter as oil or gas should be produced therefrom by the lessee, or its assigns; that, by the terms of said lease, the lessee agreed to complete a well within three months, or to pay a delay rental of $49.00 per quarter, until the completion thereof, and to pay $200.00 yearly for the gas from each and every well drilled on said premises the product from

which was marketed and used off the premises; that a producing gas well was drilled in on the leased premises; that in 1911 Minor J. Hall, being dissatisfied with the development of his lands, demanded of the defendant additional and further operations and development of his property; that after some negotiations the parties executed a compromise agreement; that by the terms of said agreement it was covenanted that the defendant would pay a yearly royalty of $300.00 (in lieu of the $200.00 provided for in the lease) on the then producing well, and an additional $300.00 per year until such time as a second well should be completed, or the leasehold surrendered, it being expressly understood that should said second well produce gas, a yearly royalty of $300.00 would be paid, but, if the same turned out to be an oil well or a non-productive well, that said company would be under no liability to make future payments of said annual sum of $300.00, in consideration of all which plaintiff's predecessor agreed not to claim or demand the drilling of any other well or wells upon said land, regardless of the number of wells which might at any time be producing gas or oil from neighboring or adjoining lands, giving absolute discretion as to future operations to said company; that defendant company, in 1927, and shortly prior to the death of Minor J. Hall, plugged said original well; that at the time of said compromise agreement a string of tools was fast in said well; that such condition was wholly unknown to said Hall; that it was concealed from him by defendant; that said string of tools caused the well to become untimely non-productive; that shortly after the plugging of said well Minor J. Hall discovered that said string of tools had been left in the well; that such condition greatly lessened the life of the well; that had Minor J. Hall known of the tools in the well at the time of said agreement he would not have entered into said compromise agreement; that it was the intent and purpose of said compromise agreement that Minor J. Hall should receive $600.00 per year, so long as gas was susceptible of being produced from said land; and, that there is now one well on said land, which in no wise is an adequate development of said land for natural gas.

In a bill for reformation the pleader must show what the real agreement was, what the agreement as reduced to writing was, and wherein the writing fails to embody the real agreement. 53 C. J. 1014, sec. 168. Also, the terms, not the effect of the contract intended to be entered into by and between the parties must be pleaded.

What was the real agreement? Has plaintiff set up the real understanding of the parties in such a way that we can reform the instrument? What is to be done concerning the clause regarding the abatement of the second $300.00 on the drilling in of a dry hole or oil well? Surely the parties intended what they said. No mistake or fraud is alleged in regard to this feature. It is apparent from the compromise agreement that the parties did not contemplate an absolute contract to pay the sum of $600.00 yearly, because it provides in no uncertain terms that the plaintiff, upon certain contingencies, will lose the right to the second $300.00. Plaintiff also contracted in view of the possible failure of the existing well—tools or no tools. By his bill he questions only one thing—the fraud in not divulging that there were tools in the well. If the defendant, by allowing tools to remain in the well, has interfered with plaintiff's right to royalties, he has a remedy at law for damages.

The court did not err in sustaining the demurrer.

*Affirmed.*